## UNITED STATES *v.* NEALE.

*(Circuit Court, E. D. Virginia.* January Term, 1883.)

1. **PERJURY—WHO MAY ADMINISTER OATH.**

   A notary public of the city of Alexandria is authorized to administer the oath required by law to be taken by a director of the first national bank of that city as to his ownership of the capital stock of such bank.

2. **SAME—ACT, WHEN COMPLETE.**

   When the oath is taken and subscribed by the accused it is complete, so far as the accused can make it, and if the notary, in certifying the fact of the oath having been taken, erroneously used the term "county" instead of "city," and used the seal of said bank instead of his own official seal, such error did not affect the oath taken.

3. **SAME—BANK DIRECTOR—OATH TO OWNERSHIP OF STOCK.**

   If accused took an oath in which he stated that he was *bona fide* owner in his own right of the number of shares of stock then standing in his name on the books of the bank, and that the said shares were not hypothecated or in any way pledged as security for any loan or debt; and if he took it willfully, and not believing that he was stating the truth,—it is perjury, if in point of fact he was not the owner of said stock, or had pledged the same for a loan or debt.

4. **PLEDGE—BY POWER OF ATTORNEY.**

   An irrevocable power of attorney given by the accused, wherein he constituted and appointed a third party his attorney for the purposes therein set forth, being a general power covering any indebtedness of accused to said third party, is a pledge of the shares of stock owned by accused mentioned therein, as long as there was any debt due by the accused to such third party.

The indictment was under the perjury act (section 5392 of the Revised Statutes) of the United States. It charged the accused with having willfully and contrary to what he believed to be true sworn falsely, in having, in taking the oath as a director of a national bank of the United States, stated and said that he was the owner in his own right of the number of shares of the capital stock of the First National Bank of Alexandria standing in his name on its books, and that he had not hypothecated or pledged them for any loan or debt;

whereas he had pledged them for a valid and subsisting debt. It charged that the said oath was taken before K. Kemper, a notary public of the city of Alexandria, who was duly authorized by law to administer the said oath.

The indictment recited that the oath was taken in pursuance of the requirements of section 5147 of the United States Revised Statutes, relating to the national banks, and that the oath was then certified by the said K. Kemper under his hand and official seal as notary, and then and there transmitted by him to the comptroller of the currency at Washington City, where the same remains filed and preserved.

During the progress of the evidence, and after the notary, who was a witness on the stand, had proved by his commission and qualification that he was a notary public of the city of Alexandria, the district attorney offered to put before the jury a paper from the office of the comptroller of the currency, of which the following is an exact copy. Nearly all of the paper was in printed form.

OFFICE OF COMPTROLLER OF THE CURRENCY. (Form No. 3.)

OATH OF DIRECTORS.

*State of Virginia, County of Alexandria, ss:* We, the undersigned directors of the First National Bank of Alexandria, of the state of Virginia, do each of us solemnly swear that we are citizens of the United States, and residents of the state of Virginia, and that we will severally, so far as the duty devolves on us, diligently and honestly administer the affairs of said bank; and that we will not knowingly violate, or willingly permit to be violated, any of the provisions of the Revised Statutes of the United States under which this bank has been organized; and that each of us is the *bona fide* owner, in his own right, of the number of shares of stock subscribed by him, or standing in his name on the books of the said bank, and required by said Revised Statutes; and that the same is not hypothecated or in any way pledged as security for any loan or debt.

WM. JAS. BOOTHE,
S. FERGUSON BENCH,
S. C. NEALE,
JOS. BRODERS,
E. S. LEADBEATER.

Subscribed and sworn to this eleventh day of January, 1882, before the undersigned, a notary public of said county.

{ Seal of First National Bank of Alexandria, Va. }       K. KEMPER.
           Organized December 17, 1864.                           Notary Public.

Every director, when elected, must at once take the above oath, and transmit the same immediately to the comptroller of the currency. See paragraph 29, National Bank Act.
[Ed. 10-13, '81—4000.]

He offered to prove this paper by K. Kemper, the notary, who was a witness on the stand.

The defense moved to exclude this paper as not such a certificate as was described in the indictment; objecting—*First,* that a notary public commissioned by a state was not competent to administer an oath required to be taken by the laws of the United States; *second,* that K. Kemper, the notary on the stand, was a notary for the *city* of Alexandria and not for the *county* of Alexandria, as described in the paper now produced; and, *third,* that this paper, which should be verified by the seal of the notary administering the oath, was not so verified, but bore, instead, the seal of the bank of which the affiant qualified as a director.

After protracted argument, the court ruled as follows.

*John S. Wise,* for the United States.

*W. W. Crump, W. H. Payne, R. A. Payne, S. Catlett Gibson,* and *R. G. Brent,* for the accused.

HUGHES, D. J. The law of the United States defining perjury, (section 5392, Rev. St.) provides, in substance, that if any one, in taking an oath before a tribunal or officer competent to administer it, in a material matter, willfully *states or subscribes* what is false, believing it to be contrary to the truth, he shall be guilty of perjury, etc.

As to the first objection to this paper, denying the power of a notary public, commissioned by a state, to administer an oath required by a law of the United States, this is settled by the act of August 15, 1876, which expressly authorizes a notary public to administer any such oath as might then have been administered by a commissioner of a circuit court of the United States; not only such oaths as are to be "used in the courts of the United States," but "acknowledgments and affidavits" also.

This act enlarges section 1778 of the Revised Statutes, which had previously given commissioners of the circuit courts general power to administer oaths in all cases in which justices of the peace and notaries might before then have administered them.

The second and third objections to the paper offered by the prosecution rest upon the ground that the paper *varies* from the certificate referred to in the indictment, and which is alleged there to have been the instrument by which the notary certified to the comptroller of the currency the fact that the director's oath had been taken by the accused as required by law.

It must be observed that the act defining perjury provides that it may be committed by willfully *stating* what is false and what the affi-

ant does not believe to be true, or by willfully *subscribing* the same. If this indictment had looked to the latter alternative and charged throughout that the accused *subscribed* what was false, believing it to be false, the objection of variance between the paper now offered in evidence, containing in that case the *corpus delicti,* and the paper described in the indictment, could be urged with some force. But the indictment nowhere charges that the accused *subscribed* a false oath. It was drawn by a skillful and experienced pleader, now the president of the supreme court of appeals of Virginia. Its charge throughout is that the accused, in taking the oath required of him as a director by section 5147 of the Revised Statutes, relating to national banking associations, *said* and *stated* that he owned the shares of stock standing in his name on the books of the bank, and had not hypothecated or pledged them, and that he in fact had pledged them absolutely.

Now I have no doubt that this paper may go to the jury from the hands of the notary who took the affidavit of the accused, corrected, as to the errors appearing upon its face, by the testimony of the notary, examined under oath before them,—to show what oath was taken by the accused; the date on which it was taken; the exact tenor of it; that it was taken in the city of Alexandria; and what the accused *stated* in making the oath,—the witness, K. Kemper, having already shown that he was a notary public for the city of Alexandria, duly commissioned and qualified under the laws of Virginia.

The prosecution is proving its case as charged in the indictment. That instrument makes no charge as to *subscribing* falsely, but confines itself to the charge of *stating* falsely. What it alleges as to the certificate having been transmitted to the comptroller of the currency is matter of recital and surplusage. It is competent to prove the charge that the accused had *stated* falsely by testimony, either oral or written. The notary, who remembers the occasion and circumstances of administering the oath, may certainly refer to this paper as a memorandum for refreshing his memory as to the date and tenor of the oath; and, moreover, if he explains to the jury that the word *county* was erroneously used in making out the certificate instead of *city,* and that the seal of the bank was inadvertently employed instead of his own official seal, the paper thus corrected may go to the jury as part of the evidence adduced to show that the accused in fact took the oath charged, where he took it, when he took it, and the precise tenor of the oath taken.

When the evidence was concluded, counsel on either side prayed respectively for instructions to the jury. The court substituted for both the following, drawn by the judge himself:

1. The court instructs the jury that K. Kemper, as a notary public for the city of Alexandria, was authorized by law to administer the oath required by law to the accused, as a director in the First National Bank of Alexandria, on the eleventh day of January, 1882.

2. It instructs the jury that if such an oath as is required by law was administered by the said K. Kemper, as such notary public, to the accused, and was taken and subscribed by the accused, then the oath was complete when so taken, so far as the accused could make it so; and if the said K. Kemper, the said notary, in certifying the fact of the oath having been taken to the comptroller of the currency, erroneously used the term "county" instead of "city," and used the seal of the said *bank* instead of *his own official seal*, such errors only affected the certificate of the notary, and did not affect the oath taken by the accused.

3. The court instructs the jury that if the accused, on the said eleventh of January, 1882, as a director of the said bank, before the said K. Kemper, as notary public for the city of Alexandria, took an oath, in which he stated that he was the *bona fide* owner in his own right of the number of shares of stock then standing in his name on the books of the said bank, and that the said shares were not hypothecated or in any way pledged as security for any loan or debt; and if the accused, in taking such oath, did so willfully, not believing that he was stating the truth,—then he committed perjury, if, in point of fact, he was not the owner of the said shares of stock, or had hypothecated or pledged them as security for a subsisting loan or debt.

4. The court instructs the jury that the irrevocable power of attorney, dated March 13, 1880, which was given in evidence, purporting to be signed by the accused, whereby he constituted and appointed William Graydon his attorney for the purposes therein set forth, was a general power covering any indebtedness of the accused to said Graydon, and bound the 60 shares of the stock of the First National Bank of Alexandria, belonging to the accused, mentioned therein, if there was any debt due by the accused to the said Graydon on the eleventh of January, 1882.

See *U. S.* v. *Bartow,* 10 FED. REP. 873; *U. S.* v. *Baer,* 6 FED. REP. 42; *U. S.* v. *Ambrose,* 2 FED. REP. 556.